# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

CRIMINAL ACTION

VERSUS

19-16-SDD-EWD

HENRY TILLMAN

## REASONS FOR RULING

On May 23, 2019, Defendant's *Motion to Suppress*[1] came for hearing in this Court. After hearing testimony and argument, the Court granted the *Motion*. Below, the Court provides further reasons in support of that ruling.

### I. FACTUAL BACKGROUND

On July 30, 2017, an officer with the Saint Landry Parish Sheriff's Office called the Baton Rouge Police Department ("BRPD") and reported to a BRPD dispatcher that Kashley Sonnier, a 17-year-old runaway with a history of running away and being forced into prostitution, was located in Room 232 of the Days Inn at 10045 Gwenadele Avenue in Baton Rouge. Based on that information, BRPD Corporal Haled Saleh was dispatched to the Days Inn, where he was joined by five other officers who heard the dispatch go out. After a series of events discussed in detail *infra*, the officers entered Room 232 without a warrant, discovering, among other things, Defendant Henry Tillman and a firearm therein.

---

[1] Rec. Doc. No. 16.
51770

The Defendant was subsequently charged with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).[2]

The Government argues that the warrantless search was proper because the possibility that Kashley Sonnier was in Room 232 and that she was in danger or otherwise in need of assistance gave rise to a valid exigent circumstances exception to the warrant requirement. The Defendant contends that, in fact, no exigent circumstances existed.

II. **LAW AND ANALYSIS**

Generally, "[t]he proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained was in violation of his Fourth Amendment rights."[3] Conversely, at a suppression hearing, the Government must prove, by a preponderance of the evidence, that the challenged evidence was lawfully obtained.[4] "Because it is essentially a factual determination, there is no set formula for determining when exigent circumstances may [exist]."[5] Nevertheless, a court "should consider the appearance of the scene of the search in the circumstances presented as it would appear to reasonable and prudent men standing in the shoes of the officers."[6]

At the hearing, the Government called BRPD Corporal Saleh to the stand. Saleh testified that the events unfolded as followed: First, the officers knocked and announced

---

[2] See *Indictment*, Rec. Doc. No. 1.
[3] *United States v. Kelley,* 981 F.2d 1464, 1467 (5th Cir.1993) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir.1992))(emphasis added).
[4] *United States v. Valenzuela*, 716 F.Supp.2d 494, 500 (S.D. Tex. 2007)(citing *United States v. Matlock*, 415 U.S. 164, 178 n. 14 (1974)).
[5] United States v. Toussaint, 838 F.3d 503, 509 (5th Cir. 2016) (citing United States v. Jones, 239 F.3d 716, 720 (5th Cir. 2001)).
[6] United States v. Rodea, 102 F.3d 1401, 1405 (5th Cir. 1996) (internal quotation marks omitted).
51770

their presence outside the room, requesting that the occupants open the door. Briefly, a black female who looked "young" and "disheveled" appeared in the window of the room. Saleh testified that BRPD dispatch had informed him that Kashley Sonnier was a 17-year-old black female. However, Saleh stated that he did not know if the person in the window was, in fact, Sonnier. When the occupants of the room persisted in not opening the door, Saleh directed one of his fellow officers, Officer Scott, to locate a hotel employee and see if they could get a key to the room. Officer Scott returned with a key, which they used to open the door. However, the security latch was engaged such that officers could only see through the three- or four-inch gap between the door and the frame. Corporal Saleh testified that through the gap, he was able to observe a black male in the room, as well as a "lump" on one of the beds. The officers ordered the black male to open the latch. When he refused, the officers pushed the door in; Saleh testified that the latch was perhaps faultily installed, because it gave way without much force at all.

Saleh denied on cross-examination that he heard any sounds of distress that would indicate imminent danger to the occupants of the room. Saleh testified that his belief that exigent circumstances existed was based on the information provided by dispatch, that Sonnier had a history of being around "bad men." The fact that the location of the hotel was, in Saleh's estimation, a "high-crime area" also factored into his assessment of the danger.

The Court finds that the Government did not bring forth evidence that justified a warrantless entry of Room 232 at the Days Inn. Kashley Sonnier's history, to the extent that

51770

the BRPD officers on the scene were aware of it, did not give the officers an objectively reasonable basis to believe that she was immediately in need of aid or otherwise threatened with harm so urgently that a warrant could not practically be obtained without risk to her safety. Saleh testified that although these events took place on a Sunday, a duty judge would have been available, and that in his experience, a warrant application would likely be approved in between one and four hours.

Although "the need to assist persons who are seriously injured or threatened with such injury"[7] is a recognized exigent circumstance, the Government simply did not demonstrate that such an emergency was apparent on the scene, or that the officers had reason to believe that it was. Saleh's testimony established that there were six BRPD officers standing guard outside of a hotel room with only one way in and one way out. The reasonable course of action would have been to apply for a warrant, reserving the right to enter the room without it if genuinely exigent circumstances presented themselves.

The Court's reasoning herein echoes the Fifth Circuit in *United States v. Menchaca-Castruita*,[8] where it held that

> A finding of exigent circumstances, however, must be based on more than a mere possibility; it must be based on an officer's reasonable belief that the delay necessary to obtain a warrant will facilitate the destruction or removal of evidence or put officers or bystanders in danger. Here, the totality of the circumstances falls well short of any reasonable foundation for such speculation.

In *Menchaca-Castruita*, the Fifth Circuit was not persuaded by the Government's contention

---

[7] *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).
[8] 587 F.3d 283, 295–96 (5th Cir. 2009).
51770

that exigent circumstances existed because, among other things, the officer on the scene "was unsure whether additional persons were present inside the residence"[9] and "he was concerned for his own safety as well as the safety of the bystanders"[10] outside of the residence. Ultimately, the Fifth Circuit found that the officers on the scene had "no articulable reason to believe that someone else might be inside [the] residence posing a threat to the officer or the bystanders."[11] Likewise here; although officers were made aware of information regarding Sonnier's past *history* of being in threatening situations, there was insufficient basis for them to conclude, given the totality of circumstances on the scene, that an exigency existed in Room 232 at the Days Inn on July 30, 2017.

The Court is not persuaded by the Government's citation to *Cady v. Dombrowski* for the proposition that a warrantless search can be permissible when the officers are engaged in certain "community caretaking functions."[12] The Supreme Court's reasoning in Cady was clearly a product of the specific context of "police-citizen contact involving automobiles,"[13] which is inapplicable here. Further, the *Cady* ruling was predicated on the Court's conclusion that "the trunk of an automobile, which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals."[14] The Court fails to see how that factual scenario is analogous to the instant case, where, even if Kashley Sonnier *was* the black female face that the officers glimpsed in the widow of the room, they had no objectively

---

[9] *Id.* at 290.
[10] *Id.* at 290.
[11] *Id.* at 295.
[12] 413 U.S. 433, 441 (1973).
[13] *Id.*
[14] *Id.* at 448.

51770

reasonable basis to suspect, that she was in imminent danger or in need of "caretaking" whatsoever.

Thus, the Defendant's *Motion to Suppress*[15] shall be GRANTED.

## III. CONCLUSION

For the reasons stated above, the Defendant's *Motion to Suppress*[16] is hereby granted.

**IT IS SO ORDERED**.

Signed in Baton Rouge, Louisiana on May 28, 2019.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[15] Rec. Doc. No. 16.
[16] Rec. Doc. No. 16.
51770